# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| TEAM RUBICON GLOBAL, LTD., | Case No. 21-10522 (JTD) |
| Debtor. | Hearing Date: January 26, 2022 at 11:00 a.m.<br>Objection Deadline: January 17, 2022 at 4:00 p.m. |

### MOTION OF THE CHAPTER 7 TRUSTEE FOR AN ORDER APPROVING SETTLEMENT AGREEMENT WITH TEAM RUBICON, INC.

Alfred T. Giuliano, the chapter 7 trustee (the "Trustee") of the estate of Team Rubicon Global, Ltd. (the "Debtor"), hereby moves this Court (the "Motion"), hereby moves the Court for entry of an order, substantially in the form attached hereto, approving the Settlement Agreement and Release (the "Settlement Agreement")[1] with Team Rubicon, Inc. ("TRI"), resolving certain litigation and other potential claims, pursuant to Fed. R. Bankr. P. 9019 (this "Motion"). In support of this Motion, the Trustee respectfully states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are sections 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### BACKGROUND

4. On March 5, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

---

[1] A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A** and incorporated herein.

5.      On Petition Date, the Trustee was appointed as chapter 7 trustee of the Debtor's estate (the "Estate") pursuant to section 701(a) of the Bankruptcy Code.

6.      On April 2, 2021, the Debtor's section 341 meeting of creditors was held and was subsequently concluded on April 20, 2021.

7.      Prior to the Petition Date, the Debtor, a charitable organization, worked to form and train other international organizations regarding disaster relief to be conducted by veterans. The Debtor's efforts sought to expand upon the work of TRI by forming like-minded organizations in other countries.

8.      TRI owns and has the sole right to license certain trademarks and intellectual property, including but not limited to the trademarks listed in Schedule A of the Settlement Agreement (collectively, the "TR Marks")

9.      On or about October 9, 2015, TRI and the Debtor entered into that certain Master Trademark License Agreement (the "MTLA"), which provided the Debtor the exclusive right to use and sublicense the TR Marks outside of the United States under the terms and conditions set forth in the MTLA

10.     Between 2015 and 2019, the Debtor entered into certain sublicense agreements with various third-party organizations (each a "TR-X") for the use of the TR Marks internationally.

11.     Certain disputes have arisen between TRI and the Debtor regarding the conduct of certain TR-Xs and the Debtor's compliance with the terms and conditions of the MTLA. On or about December 9, 2019, pursuant to the terms of the MTLA, TRI sent a notice of termination of the MTLA and, thereafter, the Debtor disputed that termination.

12. On March 24, 2020, the Debtor filed a lawsuit against TRI in the United States District Court for the Southern District of New York under the caption *Team Rubicon Global, Ltd. v. Team Rubicon, Inc.*, Index No. 1:20-cv-2537 (the "TRG Lawsuit"). On April 24, 2021, TRI filed its Answer and Counterclaims in the TRG Lawsuit against the Debtor. On February 19, 2021, TRI sought leave to supplement and amend its counterclaims against the Debtor in the TRG Lawsuit (the TRG Lawsuit, including the claims and counterclaims asserted therein are referred to herein as the "Litigation").

13. The Litigation and the disputes raised in the Litigation regarding the MTLA ultimately caused the Debtor to file for chapter 7 relief.

14. The Debtor and TRI have engaged in extensive good faith settlement negotiations through their respective legal counsel regarding the settlement of all claims asserted in the Litigation and the release of certain claims by and against all parties.

15. In order to avoid the further costs, expenses and risks associated with continuing litigation, the Debtor and TRI (the "Parties"), through the execution of the Settlement Agreement, intend to dispose of and resolve fully and completely any and all disputes, claims and issues asserted in the Litigation and certain additional claims held by the Parties.

16. Pursuant to the terms of the Settlement Agreement, TRI shall pay the Estate $50,000, and the Parties shall exchange releases and agree to dismiss the Litigation. Additionally, the Trustee will provide certain notices to the TR-Xs regarding the termination of the sublicense agreements and the obligations as result of such termination. Further, the Debtor shall assign its rights to enforce any obligations of the TR-Xs under the sublicense agreements.[2]

---

[2] The foregoing is intended to be a summary of the material terms. Parties in interest should read the entire Settlement Agreement to see the full set of terms and conditions.

**RELIEF REQUESTED AND BASIS THEREFOR**

17. By this Motion, the Trustee seeks approval of the Settlement Agreement as described herein.

18. Bankruptcy Rule 9019 provides that "[o]n motion by the [T]rustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor . . . and to any other entity as the court may direct. Fed. R. Bankr. P. 9019(a); see also Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996). Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision. Id. at 395.

19. In determining whether a settlement should be approved under Bankruptcy Rule 9019, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Id. at 393. In striking this balance, the Court should consider "(i) the probability of success in the litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors." Id. Bankruptcy Rule 9019(a) commits the approval or rejection of a settlement to the sound discretion of the bankruptcy Court. In re Michael, 183 B.R. 230, 232 (Bankr. D. Mont. 1995).

20. Moreover, settlements should be approved if they fall above the lowest point on the continuum of reasonableness. "[The] responsibility of the bankruptcy judge…is not to decide the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983); In re Planned Protective Servs., Inc., 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991); In re Blair, 538 F.2d 849,

851 (9th Cir. 1976) (court should not conduct a "mini-trial" on the merits of a proposed settlement). Thus, the question is not whether a better settlement might have been achieved or a better result reached if litigation pursued. Instead, the court should approve settlements that meet a minimal threshold of reasonableness. Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994); In re Tech. for Energy Corp., 56 B.R. 605, 608 (Bankr. N.D. Ohio 1985).

21. A review of these four factors demonstrates that the Settlement Agreement should be approved. The Trustee and his professionals have invested time and effort in analyzing the Litigation and the current state of the Debtor. In addition to the usual costs and risks of litigation, the fact that TRI is a non-profit engaged in disaster relief efforts and that the Debtor is no longer operating was also a factor in the Trustee's decision making. Any judgment obtained in the Litigation against TRI would necessarily take money away from TRI's charitable efforts and place them in a non-operating charitable entity.

22. The Trustee respectfully submits that the compromises reached with TRI are fair, reasonable, and in the best interest of the Debtor's estate and creditors. The Trustee likewise believes the Settlement Agreement is founded on the exercise of sound business judgment by the Trustee.

## **NOTICE**

23. Notice of this Motion will be provided to: (a) the Office of the United States Trustee; (b) counsel to TRI; and (c) any party filing a request for notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Trustee submits that no other or further notice is necessary or required.

**WHEREFORE**, for the reasons stated herein, the Trustee respectfully requests that the Court grant the relief requested in this Motion, enter an Order substantially in the form attached hereto, and grant such other and further relief as the Court deems just and proper.

Dated:  January 3, 2022                           */s/ David W. Carickhoff*
                                                            David W. Carickhoff (No. 3715)
ARCHER & GREINER, P.C.
300 Delaware Avenue, Suite 1100
Wilmington, DE 19801
Telephone: 302-777-4350
Facsimile:  302-777-4352
E-mail: dcarickhoff@archerlaw.com

Counsel for the Chapter 7 Trustee

114268511v1