# **EXHIBIT A**

**Settlement Agreement**

## SETTLEMENT AGREEMENT AND RELEASE

This SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") is entered into as of the Effective Date (as defined below) by, between and among Team Rubicon, Inc., a Minnesota corporation ("Team Rubicon"), and Alfred T. Giuliano, solely in his capacity as the chapter 7 trustee for the estate of Team Rubicon Global, Ltd. ("Trustee"), a Delaware corporation ("TRG" or "Debtor," and with the Trustee, collectively the "Debtor Parties"). Each of Team Rubicon, TRG, Trustee, Debtor and Debtor Parties are referred to herein individually as a "Party" or collectively as the "Parties."

### W I T N E S S E T H:

**WHEREAS**, Team Rubicon owns and has the sole right to license certain trademarks and intellectual property, including but not limited to the trademarks listed in Schedule A of this Agreement (collectively, the "TR Marks");

**WHEREAS**, on or about October 9, 2015, Team Rubicon and TRG entered into that certain Master Trademark License Agreement (the "MTLA"), which provided TRG the exclusive right to use and sublicense the TR Marks outside of the United States under the terms and conditions set forth in the MTLA;

**WHEREAS**, the MTLA required, among other things, that TRG may only register Internet domain names that use the TR Marks "provided that such Internet domain name[s] shall be registered in the name of, on behalf of, and for [Team Rubicon]" (MTLA Sec. 4C);

**WHEREAS**, pursuant to the MTLA, upon the expiration or termination of the MTLA, TRG was obligated to take certain actions relating to the end of the MTLA license, including but not limited to assigning any domain names registered by TRG to Team Rubicon and to take all steps required by the applicable domain name registrar to complete such assignment to Team Rubicon within thirty days of such termination (MTLA, Sec. 15(iv));

**WHEREAS**, between 2015 and 2019, TRG entered into certain sublicense agreements with various third-party organizations (each a "TR-X") for the use of the TR Marks internationally;

**WHEREAS**, certain disputes have arisen between Team Rubicon and TRG regarding the conduct of certain TR-Xs and TRG's compliance with the terms and conditions of the MTLA;

**WHEREAS**, on or about December 9, 2019, pursuant to the terms of the MTLA, Team Rubicon sent a notice of termination of the MTLA and, thereafter, TRG disputed that termination;

**WHEREAS**, on March 24, 2020, TRG filed a lawsuit against Team Rubicon in the United States District Court for the Southern District of New York under the caption *Team Rubicon Global, Ltd. v. Team Rubicon, Inc.*, Index No. 1:20-cv-2537 (the "TRG Lawsuit");

**WHEREAS**, on April 24, 2021, Team Rubicon filed its Answer and Counterclaims in the TRG Lawsuit against TRG;

**WHEREAS,** on February 19, 2021, Team Rubicon sought leave to supplement and amend its counterclaims against TRG in the TRG Lawsuit (the TRG Lawsuit, including the claims and counterclaims asserted therein are referred to herein as the "Litigation");

**WHEREAS**, the Parties contest any wrongdoing or liability with respect to the factual allegations made and claims asserted in the Litigation;

**WHEREAS**, on March 5, 2021, TRG filed for protection under chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**WHEREAS**, the Office of the United States Trustee appointed the Trustee to serve as the chapter 7 trustee of the Debtor's estate;

**WHEREAS,** the Parties have engaged in extensive good faith settlement negotiations through their respective legal counsel regarding the settlement of all claims asserted in the Litigation and the release of certain claims by and against all Parties;

**WHEREAS**, in order to avoid the further costs, expenses and risks associated with continuing litigation, the Parties, through the execution of this Agreement, intend to dispose of and resolve fully and completely any and all disputes, claims and issues asserted in the Litigation and certain additional claims held by the Parties;

**NOW, THEREFORE**, in consideration of the mutual covenants, promises, and conditions set forth in this Agreement, and for good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties to this Agreement hereby agree as follows:

1. **PAYMENT**

The Parties agree that, subject to and in accordance with the terms of this Agreement, Team Rubicon shall make payment of FIFTY THOUSAND DOLLARS ($50,000) to the Debtor Parties, such payment encompassing the entirety of any monies to be paid by Team Rubicon to the Debtor Parties (the "Settlement Payment").

The Settlement Payment shall be paid by wire transfer within (10) business days of the later of (i) the Effective Date of this Agreement, or (ii) the date on which the Trustee provides payment instructions to Team Rubicon.

2. **DISMISSAL WITH PREJUDICE, NO FURTHER LITIGATION**

(a)   Within five (5) business days after the Trustee's receipt of the Settlement Payment, the Parties shall enter into and jointly file stipulations to dismiss with prejudice all

claims in the Litigation (the "Stipulations of Dismissal") in the form attached hereto as **Exhibit 1**, wherein same is made a part of this Agreement.

        (b)    The Parties shall not solicit or encourage, directly or indirectly, any other person or entity to file or assert any claims, or voluntarily assist or cooperate with any person or entity filing or asserting any claims against the other Party related to the MTLA or the Litigation, except to the extent specifically required by law or legal process.

        (c)    The Parties agree that to the fullest extent permitted by law, they will not commence, aid in any way, prosecute, or cause to be commenced or prosecuted any action or other proceeding against the other Party (whether based in contract, tort, or otherwise) based upon or related to the MTLA or the Litigation, except as required by law or legal process. This Agreement and the order approving the 9019 Motion (as hereinafter defined) shall constitute a judicial bar to the institution of any such action or proceeding in any jurisdiction or similar tribunal.

    3.    **NOTICE TO SUBLICENSEE TR-X ENTITIES AND RELATED COVENANTS**

        (a)    Within ten (10) business days of the Effective Date of this Agreement, the Debtor Parties shall notify all known TR-X organizations, in the form set forth in **Exhibit 2** to this Agreement, of (i) the termination of the MTLA and TRG's right to use the TR Marks, (ii) the resultant termination of the sublicense agreements, and (iii) the consequences of any use of the TR Marks after termination.

        (b)    Upon the effective date, the Debtor Parties hereby assign to Team Rubicon all claims and defenses held by TRG against any TR-X concerning the TR Marks, the TR Domains (defined below), Team Rubicon property, property (intellectual or otherwise) incorporating the TR Marks, or any sub-license with TRG, to Team Rubicon all claims and defenses. Upon the Effective Date, the Debtor Parties hereby provide any consent necessary for Team Rubicon to prosecute any of the above-described actions against any sub-licensee. For the avoidance of doubt, Team Rubicon will bear its costs and fees associated with prosecuting any action described above and will have the right to be represented by counsel of Team Rubicon's sole choice. For the avoidance of doubt, TRG does not assign, and Team Rubicon does not assume, any of TRG's legal liabilities, including for claims held by any TR-X against TRG.

        (c)    The Trustee further covenants that he will send formal notification to each known TR-X about any property, intellectual or otherwise, including domain names, to be returned to Team Rubicon in accordance with this Agreement and the termination provisions of the MTLA and sublicense agreements, as reasonably directed by Team Rubicon.

        (d)    The Trustee further covenants that he will not assist, support, aid, fund, or cooperate with the sublicensees in connection with any continued use of the TR Marks, including with respect to use, sale, transfer, or otherwise of any use of the TR Marks, and all registered domain names utilizing the TR Marks.

(e) To the extent that the Trustee is obligated to provide any notices pursuant to this Agreement, Team Rubicon shall provide the Trustee with a list of such relevant notice recipients.

4. **REGISTRATION OF DOMAIN NAMES AND RELATED COVENANTS**

(a) Upon the Effective Date, the Debtor Parties hereby assign to Team Rubicon any and all registered domain names utilizing one or more of the TR Marks, or any variation thereof, that TRG now controls or that are or were registered by or under TRG or any TR-X (the "TR Domains"). The Trustee shall reasonably cooperate with Team Rubicon to effectuate such assignment to Team Rubicon. Such assignments shall include, but shall not be limited to, the domains "teamrubiconaustralia.org," "teamrubiconaus.org," "teamrubiconaustralia.com," "teamrubiconnor.org," "teamrubiconnorway.org," "teamrubicon.no," "teamrubiconuk.org," and "team rubiconcanada.org."

(b) The Trustee covenants that he will request any operative known TR-X, including but not limited to TR-Norway and TR-Australia, transfer and assign any TR Domains in their possession, custody, or control to Team Rubicon, that were, or should have been, registered by or on behalf of TRG pursuant to the MTLA or any sublicensee agreement by and between TRG and Team Rubicon or that TR-X and TRG. Upon the Effective Date, the Debtor Parties assign to Team Rubicon the right to enforce any and all rights against the respective TR-X, including the assignment of all claims and defenses.

(c) Upon the Effective Date, the Debtor Parties hereby relinquish any rights or title to any assets, hardware, or other equipment provided by TRG to either Team Rubicon or Team Rubicon Canada ("TR-Canada"), including the equipment identified in **Exhibit 3** to this Agreement (the "TRG Hardware"). For the avoidance of doubt, the Debtor Parties release Team Rubicon from all claims for any payment or reimbursement for the TRG Hardware and shall not seek compensation of any kind related to the TRG Hardware. To the extent that the TRG Hardware is in the possession of the Trustee, he shall make it available for Team Rubicon to retrieve.

5. **COMPLIANCE WITH MTLA TERMINATION PROVISIONS**

The Debtor Parties shall ensure compliance with the obligations set forth in Section 15 of the MTLA, which include, but are not limited to, immediate cessation of use of the TR Marks or any term, phrase, or design that is confusingly similar to, or a colorable imitation or translation of the TR Marks, or any portion of the TR Marks in any manner whatsoever.

6. **RETURN, DESTRUCTION, AND NON-USE OF TEAM RUBICON PROPERTY**

Within ten (10) business days of the Effective Date, the Trustee shall (i) erase or destroy all copies of any distribution lists, donor lists, sponsor lists, and email addresses derived from Team Rubicon's files, data, or contact lists in his possession; (ii) confirm the destruction of same, and (iii) provide a written directive in the form set forth in **Exhibit 4** to this Agreement to all current and former TRG personnel regarding their obligation to not use and destroy such information and obtain written confirmation of same, such confirmations to be shared with Team Rubicon.

7. **GENERAL RELEASE OF ALL CLAIMS**

(a)  Releases by Debtor Parties

As of the Effective Date of this Agreement, for the consideration expressed herein, the Debtor Parties, and each of their respective heirs, predecessors, successors, administrators, servants, legal representatives and assigns (the "TRG Releasors"), do hereby fully, finally and completely remise, release, waive, acquit and discharge Team Rubicon, along with its respective past and present parents, subsidiaries, municipalities, related companies affiliates, officers, directors, shareholders, members, partners, trustees, agents, employees, consultants, experts, advisors, insurers, attorneys and other professionals, and each of their respective heirs, predecessors, successors, administrators, servants, legal representatives and assigns (the "Team Rubicon Releasees") from any and all manner of action and actions, cause and causes of action, claims, liabilities, counterclaims, suits, proceedings, debts, sums of money, accounts, covenants, contracts, controversies, damages, judgments, expenses, executions, liens, claims of costs, claims of lien, penalties, attorneys' fees or any other compensation, recovery or relief on account of any liability, obligation, demand or cause of action of whatever nature, whether accrued or not accrued, known or unknown, contingent or vested as of the date of this Agreement, arising out of, in connection with, or relating to the MTLA, or facts alleged or claims asserted in the Litigation (the "TRG Released Claims").

(b)  Releases by Team Rubicon

As of the Effective Date of this Agreement, for the consideration expressed herein, Team Rubicon, and its respective heirs, predecessors, successors, administrators, servants, legal representatives and assigns (the "Team Rubicon Releasors"), does hereby fully, finally and completely remise, release, waive, acquit and discharge the Debtor Parties and their respective heirs, predecessors, successors, administrators, legal representatives and assigns (the "TRG Releasees") from any and all manner of action and actions, cause and causes of action, claims, liabilities, counterclaims, suits, proceedings, debts, sums of money, accounts, covenants, contracts, controversies, damages, judgments, expenses, executions, liens, claims of costs, claims of lien, penalties, attorneys' fees or any other compensation, recovery or relief on account of any liability, obligation, demand or cause of action of whatever nature, whether accrued or not accrued, known or unknown, contingent or vested as of the date of this Agreement, arising out of, in connection with, or relating to the MTLA, or facts alleged in or claims asserted in the Litigations (the "Team Rubicon Released Claims" and together with the TRG Released Claims, the "Released Claims").  For the avoidance of doubt, the Team Rubicon Released Claims shall not include claims held by Team Rubicon against any TR-X.

(c) The Parties acknowledge and agree that they may be unaware of or may discover facts or claims in addition to or different from those that they now know, anticipate or believe to be true related to or concerning the Released Claims.  The Parties know that such presently unknown or unappreciated facts or claims could materially affect the claims or defenses of a Party or the Parties.  It is nonetheless the intent of the Parties to give a full, complete and final release and discharge of the Released Claims.  In furtherance of this intention, the releases herein given shall be and remain in effect as full and complete releases with regard

to the Released Claims, notwithstanding the discovery or existence of any such additional or different claim, fact, or defense.

(d)     Notwithstanding the above, nothing herein shall serve to release the rights, duties and obligations created by this Agreement.

(e)     Because the releases of this Agreement specifically cover all known and unknown Claims, the Parties expressly waive any and all rights under statutes or common law principles, whether under any state's law, federal law, or otherwise, of any claims not currently known or suspected to exist by either Party at the time of executing this Agreement, including any rights under Section 1542 of the California Civil Code, and any similar laws of purpose or effect from other jurisdictions, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE RELEASOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

**THE PARTIES INTEND THAT THE RELEASED CLAIMS BE CONSTRUED AS BROADLY AS POSSIBLE.**

8. **ENTIRE AGREEMENT**

This Agreement contains the entire agreement between and among the Parties relating to the subject matter hereof and supersedes any and all other negotiations, representations, understandings and agreements. All prior and contemporaneous negotiations, understandings and agreements between the Parties are deemed abandoned and waived to the extent that they are not stated in this Agreement. This Agreement may be amended only by written agreement signed by all Parties, and a breach of this Agreement may be waived only by a written waiver signed by the Party granting the waiver. The waiver of any breach of this Agreement shall not operate or be construed as a waiver of any other similar or prior or subsequent breach of this Agreement. No Party to this Agreement has relied on any representation or promise not included in this Agreement.

9. **NO ADMISSIONS**

Nothing contained in this Agreement shall constitute or be construed to constitute an admission of wrongdoing or liability by any of the Parties or the validity of any claim or allegation, asserted or unasserted. This Agreement is entered into solely for the purpose of settling and resolving disputes between the Parties, and shall not constitute, or be asserted by any Party or third party to constitute, evidence of the existence or non-existence, validity or invalidity of any right, claim or obligation, except as expressly provided for herein, and then only for the purposes of enforcement of (or defense against) claims under or pursuant to the terms of this Agreement. This Agreement shall not be admissible in any proceeding for any purpose (other than to enforce its terms).

10. **REPRESENTATIONS AND WARRANTIES**

As a material inducement to enter into this Agreement, the Parties represent and warrant that at the signing of this Agreement and delivery of any documents hereunder:

(a) They have been fully informed of the terms and conditions of this Agreement and have done all investigation they deemed necessary prior to the execution hereof;

(b) No threat, promise, representation or warranty of any kind has been made or relied upon by any of the Parties or anyone acting on behalf of the Parties, except as is expressly stated in this Agreement;

(c) They have been represented by counsel of their choosing in connection with the negotiations and execution hereof;

(d) The claims being released herein are presently owned solely by them and that such claims have not been sold, pledged, assigned or otherwise transferred to any other person or entity;

(e) This Agreement and all other documents delivered in connection with this Agreement have been or will be duly executed and delivered by such Parties and are valid and binding agreements of such Parties and are enforceable in accordance with their terms;

(f) This Agreement shall not be subject to any claim of mistake of fact, it expresses a full and complete settlement between the Parties, and regardless of the adequacy or inadequacy of the consideration described herein, this Agreement is intended to be a final and complete settlement of claims and obligations between the Parties described herein as covered by this Agreement;

11. **BINDING EFFECT**

The terms hereof are contractual and not merely recitals and all agreements, representations, warranties, covenants, terms, conditions, and provisions of this Agreement shall survive the execution hereof and be deemed by the Parties to be fully binding upon the Parties.

12. **ATTORNEYS' FEES AND COSTS**

The Parties stipulate and agree that each Party shall bear its own attorneys' fees. However, in the event of a breach of this Agreement, the prevailing Party or Parties in an action to enforce this Agreement shall be entitled to recover, in addition to any other relief awarded, reasonable and necessary costs and attorneys' fees incurred in the successful prosecution or defense of that action.

13. **GOVERNING LAW**

All terms of this Agreement, and any dispute arising out of or related to this Agreement, shall be governed by and interpreted according to the substantive law of the State of New York, without regard to its choice of law or conflicts of laws principles. Any claim arising out of this Agreement, whether arising in contract, tort, equity, or otherwise, shall be brought exclusively in the Bankruptcy Court. Each Party hereto (including their successors) agrees not to assert, by way of motion, as a defense, or otherwise, solely in connection with any such claim, that it is not subject personally to the jurisdiction of any such court, that the claim is brought in an inconvenient forum, that the venue of the claim is improper, or that this Agreement or the subject matter hereof may not be enforced in or by any such court. Each Party hereto (including their successors) further irrevocably submits to the jurisdiction of the Bankruptcy Court solely in connection with any claim arising out of this Agreement but not for any other purpose.

14. **TIME IS OF THE ESSENCE**

Time is of the essence of each and every provision of this Agreement.

15. **WAIVER OF RIGHT TO JURY**

EACH OF THE PARTIES HERETO WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, BETWEEN ANY OF THEM ARISING OUT OF, CONNECTED WITH, RELATING TO OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN ANY OF THEM IN CONNECTION WITH THIS AGREEMENT. INSTEAD, ANY DISPUTES RESOLVED IN COURT SHALL BE RESOLVED IN A BENCH TRIAL WITHOUT A JURY. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO TRIAL BY THE COURT.

16. **NOTICES**

Any notice that any Party desires or is required to give to or serve on another Party pursuant to this Agreement shall additionally be in writing and shall be sent via electronic transmission (email) with confirmation copy sent by Federal Express.

Emailed notices are conclusively deemed received when emailed (with appropriate electronic confirmation of proper transmission and provided the confirmation copy is mailed no later than the next business day) if such electronic delivery takes place on a business day and otherwise on the next business day.

Any notice that any Party desires or is required to give to another Party pursuant to this Agreement shall be addressed to the other Parties at the address(es) set forth below. Any Party may change its address(es) by notifying in writing the other Parties of the change of address(es).

The address for Team Rubicon is as follows:

> Jake Wood
> Team Rubicon, Inc.
> 214 Main Street, #354
> El Segundo, CA 90245

With copy to:

> Matthew S. Salerno
> Latham & Watkins LLP
> 1271 Avenue of the Americas
> New York, NY 10020

The address for the Debtor Parties is as follows:

> Team Rubicon Global, Ltd.
> Alfred T. Giuliano, Trustee
> Giuliano Miller & Co., LLC
> 2301 E. Evesham Road
> Pavillion 800, Suite 210
> Voorhees, NJ 08043

> With copy to:
> c/o David W. Carickhoff, Esq.
> Archer & Greiner, P.C.
> 300 Delaware Avenue, Suite 1100
> Wilmington, DE 19801

17. **SEVERABILITY**

Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

18. **MISCELLANEOUS**

(a) The headings of the paragraphs of this Agreement are inserted for convenience of reference only and shall not control or affect the meaning, intention, construction or effect of this Agreement or any such paragraph.

(b) This Agreement shall be construed as if the Parties jointly prepared it and any uncertainty or ambiguity shall not be interpreted against any one Party because of the manner in which this Agreement was drafted or prepared.

(c) The Parties agree to act in good faith and to cooperate fully and completely to execute any and all supplementary documents and to take all additional actions which may be necessary and appropriate to give full force and effect to this Agreement.

19. **COUNTERPARTS**

This Agreement may be executed for all purposes in any number of identical counterparts, and each Party may execute any such counterpart, each of which shall be deemed an original for all purposes. A photocopy or facsimile copy of this Agreement, and any signature to this Agreement, shall be deemed to be as effective as the original for all purposes.

20. **MOTION TO APPROVE; EFFECTIVE DATE**

Notwithstanding any provision herein to the contrary, this Agreement's effectiveness is subject to Bankruptcy Court approval.

Within seven (7) days after the Parties have executed this Agreement, the Trustee will file a motion with the Bankruptcy Court pursuant to Bankruptcy Rule 9019 to obtain entry of an order approving this Agreement (the "9019 Motion"), and notice hearing on the 9019 Motion as promptly as possible consistent with applicable notice rules and the Bankruptcy Court's calendar. Both Parties will use their good faith efforts to obtain approval of the 9019 Motion. The Trustee will prosecute the 9019 Motion and will not withdraw the 9019 Motion, or continue hearing on the 9019 Motion, without Team Rubicon's consent.

The "Effective Date" of this Agreement shall be the date that is the later of (i) the date that the Agreement is approved by a final, non-appealable Order of the Bankruptcy Court, or (ii) the date on which Team Rubicon delivers the Settlement Payment to the Debtor Parties.

21. **THIRD PARTY BENEFICIARIES**

The Parties specifically intend the entities and individuals released under this Agreement are third party beneficiaries of this Agreement for the sole purpose of being able to enforce the releases provided herein. TR-Canada shall be a third-party beneficiary for the purpose of enforcing the provisions of this Agreement entitling TR-Canada to rights and title to the TRG Hardware. Aside from TR-Canada's rights as set forth in this Section, no TR-X shall have any rights as a third party beneficiary under this Agreement.

**IN WITNESS WHEREOF**, and intending to be legally bound, each of the Parties hereto has caused this Agreement to be executed as of the date first set forth above.

*[Remainder Of Page Intentionally Left Blank]*

EXECUTED this 15th day of December, 2021.

**Team Rubicon, Inc.**

By: *[signature]*
Name: Jake Wood
Position: Executive Chairman

EXECUTED this 16th day of December, 2021.

**Debtor Parties**

By: *[signature]*
Name: Alfred T. Giuliano
Position: Trustee

11

**SCHEDULE A: Team Rubicon's Trademarks and Intellectual Property**

1.          Logo owned by Team Rubicon and registered with the U.S. Patent and Trademark Office, Registration No. 5,048,837:



2.          Standard Character Mark, "TEAM RUBICON" owned by Team Rubicon and registered with the U.S. Patent and Trademark Office, Registration No. 5,048,836 for its standard character mark "TEAM RUBICON."

**EXHIBIT 1: Stipulation of Dismissal**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TEAM RUBICON GLOBAL, LTD., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TEAM RUBICON, INC., a Minnesota Corporation,<br><br>Defendant.<br><br>TEAM RUBICON, INC., a Minnesota Corporation,<br><br>Counterclaim Plaintiff,<br><br>- against-<br><br>TEAM RUBICON GLOBAL, LTD., a Delaware Corporation,<br><br>Counterclaim Defendant. | 20 Civ. 2537 (LTS) (KNF)<br><br>**STIPULATION AND [PROPOSED ORDER] OF DISMISSAL WITH PREJUDICE** |

**IT IS HEREBY STIPULATED AND AGREED**, by Plaintiff/Counterclaim-Defendant Team Rubicon Global, Ltd. and Defendant/Counterclaim-Plaintiff Team Rubicon, Inc., by and through their respective counsel and pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), subject to the approval of the Court, as follows:

    1. The above-captioned case is settled and resolved in accordance with the terms and conditions set forth in the Settlement Agreement between the Parties dated December ___, 2021, and should be dismissed with prejudice with each party to bear its own costs, expenses, and attorneys' fees.

2. The $1,000,000.00 bond (Bond Number 107272536) posted as security for the preliminary injunction ordered on June 12, 2020, shall be immediately cancelled and released to Team Rubicon, Inc. upon entry of this Order.

Dated: December 15, 2021                                     Respectfully submitted,

| | |
|---|---|
| Majed Dakak (admitted *pro hac vice*) | Jeff G. Hammel |
| Amy T. Brantly | Matthew S. Salerno |
| Mark Pluch (admitted *pro hac vice*) | Elizabeth A. Parvis |
| **KESSELMAN BRANTLY STOCKINGER LLP** | **LATHAM & WATKINS LLP** |
| 1230 Rosecrans Avenue, Suite 400 | 1271 Avenue of the Americas |
| Manhattan Beach, CA 90266 | New York, NY 10020 |
| Tel: (310) 307-4555 | Tel: (212) 906-1200 |
| Fax: (310) 307-4570 | Fax: (212) 751-4864 |
| Email: mdakak@kbslaw.com | Email: jeff.hammel@lw.com |
| Email: mpaluch@kbslaw.com | Email: matthew.salerno@lw.com |
| Email: abrantly@kbslaw.com | Email: elizabeth.parvis@lw.com |
| | |
| *Attorneys for Team Rubicon Global, Ltd.* | Matthew W. Walch (admitted *pro hac vice*) |
| | **LATHAM & WATKINS LLP** |
| | 330 North Wabash Avenue, Suite 2800 |
| | Chicago, IL 60611 |
| | Tel: (312) 876-7700 |
| | Fax: (312) 993-9767 |
| | Email: matthew.walch@lw.com |
| | |
| | *Attorneys for Team Rubicon, Inc.* |

## **EXHIBIT 2: Form Termination Letter**

Dear [X]:

We write on behalf of Team Rubicon Global, Ltd. ("TRG") in connection with the Master Trademark License Agreement ("MTLA") executed between Team Rubicon, Inc. ("Team Rubicon") and TRG on October 9, 2015, for the use of certain of Team Rubicon's intellectual property and registered trademarks (collectively, the "TR Marks"), and the related Sublicense Trademark License Agreement ("STLA") executed between TRG and [TR-X entity] on [date].

On [Effective Date], Team Rubicon and TRG entered into a Settlement Agreement and Release (the "Agreement") providing that the MTLA has been terminated. All rights to the use of the TR Marks owing thereunder or stemming from any related Sublicense Trademark Agreement have consequently terminated as well. Accordingly, we write to notify you that You are required to immediately cease and desist any and all use of the TR Marks, including but not limited to any:

- publishing, using, displaying, distributing or sublicensing Team Rubicon's trademarks, including the TEAM RUBICON mark and the Team Rubicon logo and/or any confusingly similar variations thereof in any manner whatsoever, including in connection with the advertising, marketing or other promotion, distribution, offering for sale, or sale of any products or services, including on any social media accounts;

- using any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, sold or otherwise distributed by You are in any manner associated or connected with Team Rubicon, or are licensed, approved, or authorized in any way by Team Rubicon;

- representing or suggesting in any fashion to any third party, or performing any act that may give rise to the belief, that You, or any of Your products or services, are related to, authorized by, or sponsored by Team Rubicon;

- operating or authorizing the operation of any website using any domain name incorporating any of the TR Marks or any misspelling or variation of those marks, or any domain name confusingly similar to the TR Marks; and

- using any social media or similar accounts or social media websites, and registering any social media accounts, that uses any of the TR

Marks, any misspelling or variation of those marks or any other confusingly similar mark.

You are also immediately required to modify registration of any domain names featuring the TR Marks so that they are registered in Team Rubicon's name and on its behalf no later than five days from the receipt of this letter.

Please immediately acknowledge receipt of this letter and confirm that you will cease and desist all use of the TR Marks as required by the Agreement. In the event that you do not comply, TRG and Team Rubicon will seek all available remedies at law and equity, including sanctions and fees, stemming from noncompliance.

Nothing contained in this letter constitutes an express or implied waiver of TRG's or Team Rubicon's rights or remedies, all of which are expressly reserved.

Sincerely,

**EXHIBIT 3: TRG Hardware**

| Item | Model Number | Serial Number / SIM # | Quantity | Location | Status | Date Purchased | Market Value |
|---|---|---|---|---|---|---|---|
| Isatphone2 | Isatphone2 | 898709917416679920 | 1 | TRCAN | In Use | 2017 | $ 1,000.00 |
| Isatphone2 | Isatphone2 | 898709917416679923 | 1 | TRCAN | In Use | 2017 | $ 1,000.00 |
| Isatphone2 | Isatphone2 | 898709917416679916 | 1 | TRCAN | In Use | 2017 | $ 1,000.00 |
| Isatphone2 | Isatphone2 | 898709917416679922 | 1 | TRCAN | In Use | 2017 | $ 1,000.00 |
| Isatphone2 | Isatphone2 | 898709917416677788 | 1 | TRCAN | In Use | 2017 | $ 1,000.00 |
| SurfacePro 4 | 1724 | 37775670253 | 1 | TRCAN | In Use | 9/6/2017 | $ 992.66 |
| SurfacePro 4 | 1724 | 9888263953 | 1 | TRCAN | In Use | 9/6/2017 | $ 992.66 |
| SurfacePro 4 | 1724 | 37377164363 | 1 | TRCAN | In Use | 9/6/2017 | $ 992.66 |
| SurfacePro 4 | 1724 | 19289670253 | 1 | TRCAN | In Use | 9/6/2017 | $ 992.66 |
| SurfacePro4 | 1724 | 65693664653 | 1 | TRCAN | In Use | 9/6/2017 | $ 992.66 |
| SurfacePro4 | 1724 | 11106564553 | 1 | TRCAN | In Use | 9/6/2017 | $ 992.66 |
| Surface Pro Type Cover | 1725 | 30728172754 | 1 | TRCAN | In Use | | |
| Surface Pro Type Cover | 1725 | 30690372754 | 1 | TRCAN | In Use | | |
| Surface Pro Type Cover | 1725 | 30744372754 | 1 | TRCAN | In Use | | |
| Surface Pro Type Cover | 1725 | 30887272754 | 1 | TRCAN | In Use | | |
| Surface Pro Type Cover | 1725 | 30855772754 | 1 | TRCAN | In Use | | |
| Surface Pro Type Cover | 1725 | 9888263953 | 1 | TRCAN | In Use | | |
| | | | | | | Total | $ 10,955.96 |

### EXHIBIT 4: Form Letter Regarding Return, Destruction and Non-Use of Team Rubicon's Information

[DATE]

### VIA EMAIL

[NAME]
[ADDRESS]
[EMAIL ADDRESS]

  Re: Notice of Obligation to Delete Information

To Whom it May Concern:

  This letter is to inform you that Team Rubicon Global, Ltd. ("TRG") has entered into a Settlement Agreement (the "Agreement") with Team Rubicon, Inc. ("Team Rubicon") in connection with the lawsuit captioned *Team Rubicon Global, Ltd. v. Team Rubicon, Inc.*, No. 20-cv-2537 (LTS) (KNF), and as a former [employee/agent/officer] of TRG, you have obligations and responsibilities in connection therewith. Specifically, pursuant to Section 6 of the Agreement, you are hereby directed to immediately delete, erase, and/or destroy any of Team Rubicon's information, including, but not limited to, any original or copied distribution lists, donor lists, sponsor lists, and/or email addresses or information derived from Team Rubicon's files, data, computer programs, software, and/or contact lists. TRG and Team Rubicon will immediately seek all available remedies at law and equity, including sanctions and fees, stemming from any noncompliance.

  Please promptly sign in the space provided below and return to [NAME] via email at [ADDRESS] to confirm that you have complied with the above.

Very truly yours,      ACCEPTED AND ACKNOWLEDGED:

Team Rubicon Global, Ltd.

               By: _____

               Print Name: _____

               Title: _____

               Date: _____, 2021